592 P.2d 1370

**DEPARTMENT OF EMPLOYMENT,**
**Plaintiff-Respondent,**

v.

**CHAMPION BAKE–N–SERVE, INC., an**
**Idaho Corporation,**
**Defendant-Appellant.**

**No. 12777.**

Supreme Court of Idaho.

April 5, 1979.

Wayne P. Fuller of Fuller & Radke, Caldwell, for defendant-appellant.

David H. Leroy, Atty: Gen., R. LaVar Marsh, Donald L. Harris, Deputy Attys. Gen., Boise, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from an order of the Industrial Commission finding that students employed in a bakery owned and operated by Southern Idaho Corporation of Seventh Day Adventists were engaged in "covered employment" under Idaho's Employment Security Law, I.C. § 72–1301 to § 72–1380. We set aside the Commission's order.

The Southern Idaho Corporation of Seventh Day Adventists is a nonprofit organization and among its corporate purposes is the aim to diffuse moral and religious knowledge. In furtherance of that purpose, the corporation operates Gem State Academy, which is a fully accredited high school located near Caldwell, Idaho.

The State requires 170 academic credits for graduation from high school. Ten hours of those required credits may consist of certain units of religion. Gem State Academy, however, requires 210 credits for graduation. Those additional required 40 hours of credit are in religion credits. Within those additional required 40 hours of credit are ten hours of work experience.

The tenets of the Seventh Day Adventists religion stress the value of labor, and work experience is conceived to be an integral part of the students' religious training. Hence, as a part of their religious training, students at the academy are assigned to work at a bakery, a laundry, a cafeteria, the school or a farm. To provide the students an opportunity for work experience, the Seventh Day Adventists Corporation owns, operates and controls Champion Bake-N-Serve.

The operation of the bakery is carefully structured around the needs of the students. Each student works at most a four hour shift, unless there is an emergency. Most students work one four hour shift, unless there is an emergency. Most students work one four hour shift per day, five days a week. The bakery is closed at mealtimes, for chapel services and during recreational periods. If any new equipment is required, it is purchased with the intent of creating or preserving as many jobs for students as possible. Those students working at the bakery are paid the state minimum wage and those wages are used exclusively as credits toward students' tuition costs. As stated, students working at the bakery are allowed ten credit hours toward graduation.

The bakery has commercial aspects. It produces an average of 1,000 baked products and 20,000 to 25,000 loaves of frozen dough daily. The products are advertised and sold in interstate commerce under the franchise of Rhodes Bake-N-Serve Bread at prices competitive with similar products. The objective of the bakery, however, is not primarily profit seeking. In 1976, although the bakery experienced a gross income of $1,200,000, it sustained a net loss of $30,000. It sustained a loss of $40,000 in 1975, but obtained a profit of $40,000 in 1974. Any deficits in the operation of the bakery are absorbed by the Seventh Day Adventists Corporation, as are any profits.

This controversy arose when a new employee of the bakery erroneously and mistakenly included students who worked at the bakery on the state unemployment tax return for the first quarter of the year 1975. Non-student employees at the bakery had previously been reported to the State as covered employment, but the bakery had previously paid no unemployment security taxes on the wages of academy students to either the state or federal governments. Upon discovery of the error, quarterly returns were filed showing no students as covered employees and claiming a credit for the previous overpayments. In response to that claim for reimbursement, the Department of Employment issued its decision that *all* wages paid in the operation of the bakery constituted covered employment. The applicable administrative appellate procedures were exhausted, resulting in the decision of the Industrial Commission and this appeal therefrom.

It is the apparent position of both parties on this appeal that the applicable statute is I.C. § 72–1316A(g)(1)(ii), which provides in pertinent part:

The term "exempt employment" means:

\* \* \* \* \* \*

Service performed:

In the employ of . . . an organization which is operated *primarily* for religious purposes and which is operated, supervised, controlled, or principally

supported by a church, or convention or association of churches . . .

(Emphasis supplied.).[1]

In this case, as in other appeals from the Industrial Commission, the scope of our review is limited to questions of law. Idaho Const. Art. V, § 9. *See Toland v. Schneider,* 94 Idaho 556, 494 P.2d 154 (1972). The parties agree that the bakery is "operated, supervised, controlled or principally supported by a church," and hence the sole issue here is whether as to the students the bakery is operated primarily for religious purposes.

The pertinent findings and conclusions of the Commission state:

> The Commission finds and concludes that the primary purpose of the operation of the bakery is to further the educational purposes and objectives of the corporation, which is designed to fulfill certain aspects of the religious philosophy of the church. Nevertheless, a substantial commercial and competitive nature of the production and marketing of the food product produced to the extent it is engaged in by the bakery is not considered to be a "religious activity" nor "for religious purposes," as is required for exemption from coverage under the employment security law. The Commission therefore concludes that the decision of the appeals examiner of the Department of Employment holding that services in connection with the operation of the bakery must be considered as being in covered employment should be affirmed.

■ We hold that the Industrial Commission erred in its application of the Idaho unemployment security law. Although the Commission found that the bakery was operated *primarily* for religious purposes, it concluded that because of the commercial aspects of the bakery, as a matter of law the exemption relied on by the bakery was

not applicable. In I.C. § 72–1316A(g)(1)(ii), the legislature provided an exemption if the operation were *primarily* for religious purposes. The utilization of the word "primarily" necessarily contemplates other attributes in addition to the most prominent one. The word "primarily" means "of first importance," "principally," "essentially," or "fundamentally" as opposed to "secondarily" or "merely incidental." *Malat v. Riddell,* 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); *Brennan v. Harrison County, Miss.,* 505 F.2d 901 (5th Cir. 1975); *Ethyl Corp. v. Adams,* 375 A.2d 1065 (Me.1977). It was error for the Industrial Commission to conclude that the religious exemption was not applicable in 'the case at bar because there were commercial aspects coexistent with the primary religious purpose.

The Department of Employment strenuously directs our attention to *In re Gem State Academy Bakery,* 70 Idaho 531, 224 P.2d 529 (1950). That case involved the same bakery and the same religious organization present in the case at bar. That case, however, involved fulltime employees of the bakery involved in the commercial vending of the bakery's products on a commission basis. The Court, in its opinion, made a point that the employees there involved were not students. The Court also pointed out that the purposes of the employment security law are humanitarian and seek to prevent economic ills arising out of unemployment by providing unemployment benefits to those unemployed through no fault of their own. The Court held that the humanitarian purposes of the law should not be thwarted. In the case at bar, the Department of Employment agrees that the students who are here sought to be held as "covered employment" would nevertheless be unable to obtain unemployment insurance benefits. The Department of Employment argues that such result is immaterial. We do not agree. The Depart-

1. I.C. § 72–1316A(c)(3), effective July 1, 1976, and an amendment thereto effective March 15, 1978, might be deemed applicable to circumstances presented by the instant cause, but their retroactive or nonretroactive effect were not argued or presented here and hence were not considered.

ment may not rely upon the humanitarian purposes of the unemployment security law and argue that the act should be construed with those purposes in mind and yet ignore the ineligibility of the workers to take advantage of such humanitarian aspects of the law.

■ In the words of the statute, the bakery is an organization operated and controlled by a convention or association of churches and insofar as the students are concerned, it is operated primarily for religious purposes. Hence, their services are not "covered employment" under the Idaho unemployment security law. The orders of the Industrial Commission are set aside and the cause remanded for further proceedings consistent herewith.

DONALDSON, BAKES and BISTLINE, JJ., and SCOGGIN, J. Pro Tem., concur.