ASCENSION LUTHERAN CHURCH, St. Stephen's Lutheran Church, St. John's Evangelical Lutheran Church and Emmanuel Lutheran Church, Plaintiffs,

v.

EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, and F. Ray Marshall, United States Secretary of Labor, Defendants.

No. C–C–79–206.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Oct. 21, 1980.

B. Irvin Boyle and Norman A. Smith, Boyle, Alexander & Hord, Charlotte, N. C., for plaintiffs.

Howard G. Doyle, Chief Counsel, and T. S. Whitaker, Staff Atty., Employment Sec. Commission, Raleigh, N. C., for the defendant Employment Security Commission of North Carolina.

Harold M. Edwards, U. S. Atty., Asheville, N. C., Alice Daniel, Acting Asst. Atty. Gen., and Jonathan Ginsburg, Dept. of Justice, Washington, D. C., for F. Ray Marshall, United States Secretary of Labor, defendant.

## ORDER

McMILLAN, District Judge.

Plaintiffs, four Missouri Synod Lutheran churches which operate elementary schools, brought this action in Mecklenburg County Superior Court, protesting the inclusion of their schools' employees in the North Carolina unemployment compensation program. All plaintiffs seek a declaration that the Employment Security Law, Chapter 96 of the North Carolina General Statutes, does not apply to them. Three plaintiffs seek a refund of contributions they have made under the statute. (The fourth plaintiff, St. Stephen's Lutheran Church, has paid no contributions and thus seeks only declaratory relief.)

The North Carolina Employment Security Commission, the only defendant in the original complaint, removed the case to the United States District Court for the Western District of North Carolina on July 11, 1979, and added the United States Secretary of Labor, F. Ray Marshall, as a defendant. The matter is now before the court on plaintiffs' motion for summary judgment and several motions by defendants. Those motions include (1) the Secretary's motions (a) for dismissal, (b) for dismissal of the entire case, (c) for judgment on the pleadings, and (2) the Employment Security Commission's motions (a) for a stay and (b) for summary judgment. These motions were heard on August 28, 1980. As suggested by the court on that date, plaintiffs subsequently have filed a motion to remand the case to state court, pursuant to 28 U.S.C. § 1447(c).

### I. Facts

North Carolina's Employment Security Law, N.C.G.S. § 96–1 *et seq.*, was enacted in 1936 pursuant to Title IX of the Social Security Act of 1935, forerunner of the Federal Unemployment Tax Act, now codified at 26 U.S.C. § 3301 *et seq.* ("FUTA"), which was enacted during the depression of the 1930's to avert disastrous consequences of unemployment. FUTA establishes a system of financial incentives through which states are encouraged–but not required–to adopt unemployment compensation laws that parallel the FUTA system. Though participation in the federal program is entirely voluntary, *Carmichael v. Southern Coal Co.*, 301 U.S. 495, 525–26, 57 S.Ct. 868, 880, 81 L.Ed. 1245 (1937), the states have found it necessary as a practical matter to participate in the federal program.

North Carolina has participated in the federal program for more than forty years by collecting a state unemployment tax and remitting the tax revenues to the federal government. The state in turn requests funds from the federal government to pay unemployment claims, and the federal government, through the Department of Labor, then returns the state revenues along with a federal subsidy. In order to remain eligible for the federal program, the state must comply with the standards set out in FUTA as enforced by the Department of Labor. *See* Affidavit of Warren G. Witmer, Secretary of N. C. Employment Security Commission. *See also* N. C. Employment Security Law, N.C.G.S. § 96–1 *et seq.*

Until 1970, FUTA and the North Carolina Employment Security Law excluded non-

profit employers from their coverage. In 1970, Congress amended the act to require inclusion of individuals employed by nonprofit organizations. The amendments, however, created several exceptions, including work performed in nonprofit elementary and secondary schools.

In 1976, Congress enacted the Unemployment Compensation Amendments of 1976, Pub.L.No.94–566, 90 Stat. 2667. Those amendments left intact an exclusion from FUTA's coverage for any services performed

"(1) in the employ of (A) a church or convention or association of churches, or (B) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches . . . ."

26 U.S.C. § 3309(b)(1). Nevertheless, the amendments specifically eliminated the exclusion previously in effect for service performed "in the employ of a school which is not an institution of higher education." 84 Stat. 697–98, formerly codified at 26 U.S.C. § 3309(b)(3) (1970).

In response to the 1976 FUTA amendments, North Carolina changed its Employment Security Law, effective January 1, 1978, to mirror the federal amendments. That North Carolina law, N.C.G.S. § 96–8(6)k. 15, excludes from coverage

"[s]ervices performed (i) in the employ of a church or convention or association of churches, or an *organization which is operated primarily for religious purposes* and which is operated, supervised, controlled or principally supported by a church or convention or association of churches; or (ii) by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order . . . ." [Emphasis added.]

North Carolina discontinued its exemption of nonprofit elementary and secondary schools from its unemployment compensation program, N.C.G.S. §§ 96–8(5)q, 96–8(6)j. Representatives of the Employment

Security Commission interpreted these amendments to require participation of *all* nonprofit elementary and secondary schools.

The congressional legislative history supports Secretary Marshall's interpretation *that church–related schools were to be covered by the act. See, e. g.,* S.Rep.No.1265, 94th Cong., 2d Sess. 8 (1976), U.S.Code Cong. & Admin.News 1976, p. 5997. That Senate report estimates that repeal of the exception for nonprofit schools would permit the inclusion under FUTA of 242,000 new employees, a figure which approximates the total number of teachers in *all* nonprofit elementary and secondary schools.

Though no such legislative history is available for North Carolina, it is unlikely that the state intended to deviate from the application of the federal statute. Moreover, few nonprofit schools in the state are not church‑related.

Secretary Marshall in 1978 issued a letter and later the Department of Labor issued a directive which stated that "[t]he exclusion in section 3309(b)(1)(A) relating to church employees has no other application to *activities performed in elementary and secondary schools since the schools are not churches within the meaning of that section.*" The directive stated further that the exclusion in section 3309(b)(1)(B) does "not apply to institutions where the employees of the institution are *primarily engaged in educational activities at the elementary and secondary school level.*" U. S. Department of Labor Directive to State Employment Security Agencies, May 30, 1978 (emphasis added). Marshall reasonably maintained that Congress, by enacting the amendments, intended that FUTA should apply to all nonprofit elementary and secondary schools, including the church–related schools which comprise most of the country's nonprofit schools.

Plaintiffs' schools were taxed under the revised act. All plaintiffs but one paid the tax under protest with a demand for a refund. *See* Affidavit of Warren G. Witmer, Secretary of Employment Security

Commission. The Employment Security Commission denied the refund, and plaintiffs brought this action in state court pursuant to N.C.G.S. § 96–10(f).

II. *Discussion*

■ A. *North Carolina's Employment Security Law does apply to church–related schools.*–The above history makes it obvious that the North Carolina law does require employment security contributions from church–related schools, and that they are obligated to pay the appropriate taxes. In brief recap, this conclusion is supported by (1) testimony of both Secretary Marshall and North Carolina Employment Security Commission Secretary Witmer; (2) the text of the 1970 amendments; (3) by the 1976 amendment which removed the exclusion previously in effect for nonprofit elementary and secondary schools; (4) by the North Carolina amendment to its Employment Security Law to reflect the same change, *see* N.C.G.S. §§ 96–8(5)q, 96–8(6)j and 96 8(6)k. 15.

■ B. *Application of the statute to church–related schools does not violate the free exercise and establishment clauses of the First Amendment to the United States Constitution.*–Defendants in applying the statute have not attempted to impede the observance of a religion or discriminate among religions, results which are necessary if a violation of the free exercise clause is to be found. *Braunfeld v. Brown*, 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961). Plaintiffs have not shown that requiring them to participate in the unemployment compensation program unduly burdens their right freely to exercise their beliefs. The state requires only that church–related schools submit certain records to the state and that they pay taxes to the Employment Security Commission *or* reimburse eligible former employees on an individual basis. N.C.G.S. § 96–9(d). The First Amendment does not invalidate a law merely because it imposes a financial burden on a person's practice of his or her religious beliefs. *Braunfeld v. Brown, supra*, at 607, 81 S.Ct. at 1148. Plaintiffs here

have made no showing that participation in the state's unemployment program would burden them any more than requiring their schools to make contributions to the program; requiring such contributions is hardly a burden which interferes with the practice of religious beliefs.

Requiring participation in the unemployment compensation program does not effect excessive entanglement by the state in religious affairs nor encourage certain religious activities over others, in violation of the First Amendment's establishment clause. The state has no intent to meddle in religious affairs. It simply intends to provide a system of compensation for employees of church related schools who lose their jobs. The unemployment compensation system affects only those schools which discharge employees, and it treats all schools equally, discriminating neither among religions nor between secular and sectarian schools. Indeed, the only reported case in which a court reaches the merits of similar First Amendment claims holds that South Dakota's unemployment compensation statute, based on FUTA, does not create excessive government entanglement with religion. *In re Unemployment Insurance Coverage of Northwestern Lutheran Academy*, 290 N.W.2d 845 (S.D.1980), *cert. granted*, U.S. , 101 S.Ct. 353, 66 L.Ed.2d 214 (1980).

Plaintiffs have not shown that North Carolina's Employment Security Law does not apply to their elementary and secondary schools, nor have they shown that the state law violates their First Amendment rights. Plaintiffs' motion for summary judgment is therefore denied, and plaintiffs are authorized to proceed to trial in state court.

C. *Defendant Secretary Marshall's Motion to Dismiss should be allowed.*–Defendant Marshall moves to dismiss any claims against him by plaintiffs on the ground that plaintiffs do not satisfy the minimal constitutional standing requirement to bring suit against him. (Although plaintiffs did not name Marshall as a defendant in their complaint, defendant Employment Security Commission moved to join Marshall as a defendant, and the court without opposition

granted the motion joining him as a necessary party on September 27, 1979.)

Plaintiffs have standing to sue defendant Marshall only if "the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Plaintiffs have not sought to make such a showing. Defendant Employment Security Commission sought to add Marshall as a defendant because Marshall was arguably a necessary party to this action due to the persuasive effect of the federal financial incentives on North Carolina's employment security legislation and policies. The Department of Labor administers FUTA and certifies only those states which comply with federal statutes and regulations to receive federal subsidies.

■ No party has shown that defendant Marshall's presence in this suit is necessary to afford the requested relief. Although North Carolina's Employment Security Law is based upon the federal statute, with which it must comply to qualify the state for the federal subsidy, the North Carolina statute is a *state* law which is separate and independent from direct federal control. The Department of Labor attempts to insure that *participating* states comply with statutory requirements, but it cannot force any state to participate. Defendant Marshall thus cannot grant plaintiffs any of the relief they seek. Defendant Employment Security Commission may have intended to set forth a claim against the Secretary of Labor, but it has not done so. The action as to defendant Marshall is therefore dismissed.

■ D. *Plaintiffs' Motion to Remand to State Court.*–With Secretary Marshall out of the case, there is no reason to keep this action in federal court because this court does not have jurisdiction to award plaintiffs any of the relief they seek. Plaintiffs initially brought this action in state court; a state court is the proper forum to dispose of the claims because the federal Tax Injunction Act, 28 U.S.C. § 1341, prohibits this court from granting the relief sought by plaintiffs.

The Tax Injunction Act provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

28 U.S.C. § 1341.

Although plaintiffs seek a declaratory judgment and recoupment of taxes already paid, rather than an injunction, the statute as interpreted also bars the court from granting such relief. A declaratory judgment that the Employment Security Law does not apply to church–related schools or is invalid if applied to them would effectively prevent collection of further unemployment taxes from them. Federal courts, moreover, have long adhered to a policy that they "refrain from enjoining the collection of allegedly unlawful state taxes [which] should likewise govern the exercise of their discretion in withholding [declaratory relief]." *Hillsborough v. Cromwell*, 326 U.S. 620, 623, 66 S.Ct. 445, 448, 90 L.Ed. 358 (1946). In the only reported case on this issue, the district court for the Eastern District of Tennessee dismissed a complaint brought by two Baptist churches for injunctive and declaratory relief. *Independent Baptist Church of Red Bank v. Tennessee*, 468 F.Supp. 71 (E.D.Tenn.1978). That court held that the Tax Injunction Act prohibited it from granting plaintiffs relief from the enforcement of Tennessee's employment security law, and it found that "a declaratory judgment on the plaintiffs' rights under the state and federal statutes would be inappropriate" because "the policy behind refusing to grant an injunction in a tax assessment case is undermined when the Court declares the rights of the parties." *Id.* at 76.

The Tax Injunction Act also prohibits plaintiffs from recovering taxes they have already paid, for section 1341 "applies to suits for refunds, as well as to anticipatory relief." *Kelly v. Springett*, 527 F.2d 1090, 1094 (9th Cir. 1975).

North Carolina has provided an adequate remedy in its state courts if the Employment Security Commission refuses to refund the unemployment taxes requested by three of these plaintiffs. The three plaintiffs, at least, are entitled to sue the Employment Security Commission in state superior court, pursuant to N.C.G.S. § 96–10(f), as they originally did in this case.

Although plaintiffs' claims for relief are dubious, plaintiffs deserve the opportunity to bring their action in a forum which is theoretically capable of granting the desired relief. The Tax Injunction Act would preclude this court from granting such relief, even if plaintiffs could show they had a valid claim.

IT IS THEREFORE ORDERED:

1. That plaintiffs' motion for summary judgment is denied.

2. That the suit as to defendant Marshall is dismissed.

3. That this case is remanded, pursuant to 28 U.S.C. § 1447(c), to the Superior Court for Mecklenburg County, North Carolina, for further proceedings.