COMMUNITY LUTHERAN SCHOOL, Lutheran Interparish School Association, and Zion-Saint John Lutheran School Association, Appellants,

v.

IOWA DEPARTMENT OF JOB SERVICE, Appellee.

No. 66485.

Supreme Court of Iowa.

Nov. 24, 1982.

Lutheran School, incorporated by Immanuel Lutheran Church, Klinger, and St. Paul's Lutheran Church, Readlyn; Lutheran Interparish School Association, incorporated by St. Paul's Lutheran Church, Williamsburg, St. John's Lutheran Church, Homestead, Immanuel Lutheran Church, Williamsburg, and Trinity Lutheran Church, Conroy; and Zion-St. John Lutheran School Association, incorporated by Zion Evangelical Lutheran Church and Evangelical Lutheran Church of St. John, Paullina. All of these churches and schools are affiliated with the Lutheran Church-Missouri Synod. Each of the three schools appealed to district court from denial of the exemption by the Iowa Department of Job Service. The appeals were there consolidated for review, and were affirmed. The schools then appealed to this court. We will refer to the schools collectively as the Lutheran schools.

This litigation arose as a result of recent amendments to the Federal Unemployment Tax Act (FUTA), chapter 23 of the Internal Revenue Code, and to IESL. FUTA imposes a tax on certain employers with respect to their employees but exempts all non-profit employers. FUTA allows covered employers to offset against their FUTA tax liability contributions into a federally-approved state unemployment fund. In order to meet federal standards, state unemployment compensation laws must cover certain non-profit employers who are otherwise exempt under FUTA.

Prior to 1978, FUTA permitted qualified state unemployment programs to exclude non-profit employers from coverage as to service performed

(1) in the employ of (A) a church or convention or association of churches, or (B) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches;

(2) by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order; [or]

Paul E. Horvath, Des Moines, for appellants.

Joseph L. Bervid, Walter F. Maley, and Blair H. Dewey, Des Moines, for appellee.

UHLENHOPP, Justice.

In this appeal we are asked to recognize a statutory exemption from coverage of the Iowa Employment Security Law, chapter 96 of the Iowa Code of 1981 (IESL), for three parochial schools which are separately incorporated from the churches in Iowa that formed them. The schools are Community

(3) in the employ of a school which is not an institution of higher education.

. . . .

I.R.C. § 3309(b) (1976). Iowa's plan contained identical provisions in order to qualify. Iowa Code § 96.19(7)(a)(6)(a), (b), (c) (1977). All public and private schools were exempt from coverage under this statute.

In 1976 Congress amended FUTA by deleting the third exemption for employees "in the employ of a school which is not an institution of higher education." Pub.L. No. 94–566, § 115(b)(1), 90 Stat. 2670 (1976) (effective 1978). Iowa likewise deleted this exemption in order to remain qualified. 1977 Iowa Acts, ch. 54, § 20; Iowa Code § 96.19(6)(a)(6)(a), (b), (c) (1981) (all references are to that Code unless otherwise stated).

The United States Secretary of Labor interpreted this deletion as making covered employers, for purposes of FUTA, of all elementary and secondary schools regardless of their public, private, or religious nature. Furthermore, in light of the deletion he interpreted the exemption of section 3309(b)(1), relating to religious employers, as *not* exempting religious schools from coverage.

The Secretary's directive regarding coverage of religious schools did not meet with success. Two cases did follow the directive. *Ascension Lutheran Church v. Employment Security Comm'n of North Carolina,* 501 F.Supp. 843, 845 (W.D.N.C.1980); *In the Matter of Northwestern Lutheran Academy,* 290 N.W.2d 845, 852 (S.D.1980). Both of those cases, however, have been undercut by subsequent court decisions. The United States Supreme Court overruled *Northwestern Academy* and made abundantly clear that the exemption in section 3309(b)(1) is still available to elementary and secondary religious schools. *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 788, 101 S.Ct. 2142, 2148, 68 L.Ed.2d 612, 624 (1981). *See also State of Alabama v. Marshall,* 626 F.2d 366, 368 (5th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981) (ignored directive and held that the deletion of section 3309(b)(3) did not remove religious schools' exemption). Apparently the present secretary of labor has abandoned the position taken in the directive. *See California v. Grace Brethren Church,* —— U.S. ——, ——, 102 S.Ct. 2498, 2505, 73 L.Ed.2d 93, 104 (1982).

In *St. Martin* the Court set out the test for exemption under section 3309(b)(1). One method of obtaining exemption is to demonstrate that the school employees are "in the employ of a church." I.R.C. § 3309(b)(1)(A). The schools in *St. Martin* were held to meet this exemption, as they were directly operated by a church. 451 U.S. at 785, 101 S.Ct. at 2149, 68 L.Ed.2d at 622. Though not at issue in *St. Martin,* the Court noted that a religious school *separately incorporated* from a church would not fall under the section (b)(1)(A) exemption but instead would have to meet the requirements of section (b)(1)(B) by showing "(1) that the organization 'is operated primarily for religious purposes', and (2) that it is 'operated, supervised, controlled, or principally supported by a church or convention or association of churches'." *Id.* at 782, n. 12, 101 S.Ct. at 2148, n. 12, 68 L.Ed.2d at 620, n. 12.

After the Secretary's directive but before the decisions in *St. Martin* and *Alabama v. Marshall* were announced, the Iowa Department of Job Service notified Iowa parochial schools that they would have to pay unemployment tax. Several schools including the Lutheran schools challenged the extension of coverage to them. An administrative hearing officer ruled against Job Service and granted exemptions as to schools whose employees were under the direct control of a church. The hearing officer based his decision on this court's holding in *Sugar Plum Tree Nursery School v. Iowa Dep't of Job Service,* 285 N.W.2d 23 (Iowa 1979).

In *Sugar Plum* we held employees of a day care center directly operated by a church were "in the employ of a church" and their services were exempt under section 96.19(6)(a)(6)(a) of the Iowa Code—Iowa's statutory equivalent to FUTA's section 3309(b)(1)(A). But we did not reach

the issue of what exemption, if any, applies to religious schools *separately incorporated* from churches.

In resolving the latter issue in the challenge by the schools, the hearing officer used the test not yet annunciated in *St. Martin,* that a separately incorporated school must show (1) it is operated primarily for a religious purpose and (2) it is operated, supervised, controlled, or principally supported by a church or convention or association of churches. While holding that the second prong of the test was met by the Lutheran schools, the hearing officer decided that those schools were operated primarily for educational purposes. He therefore denied them exemption.

The Lutheran schools appealed to district court pursuant to section 17A.19 of the Iowa Administrative Procedure Act (IAPA). They contended that they were operated primarily for religious purposes and therefore met the requirements of section 96.19(6)(a)(6)(a). They also contended that refusal to exempt them would constitute an unconstitutional denial of religious freedom under the first amendment to the United States Constitution. The district court agreed that the schools were operated primarily for educational purposes, and affirmed. It also held the Lutheran schools' constitutional claim to be without merit.

In their appeal to this court, the Lutheran schools ask us to determine that they are "operated primarily for religious purposes" within section 96.19(6)(a)(6)(a) of the Iowa Code and its FUTA equivalent. Should we hold to the contrary, they ask us to declare the coverage of the Lutheran schools under FUTA and IESL to be violative of the first amendment.

■ I. Tax exemption statutes are strictly construed with doubts resolved in favor of taxation and against exemption. *Parshall Christian Order v. Board of Review,* 315 N.W.2d 798, 801 (Iowa 1982); *Congregation B'Nai Jerusalem v. Board of Review,* 301 N.W.2d 755, 756 (Iowa 1981). Furthermore, the Iowa Employment Security Law is interpreted liberally to achieve the legislative goal of minimizing the burden of involuntary unemployment. *Smith v. Iowa Employment Security Comm'n,* 212 N.W.2d 471, 472–73 (Iowa 1973). Our review of agency action under IAPA is at law, not de novo. *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 311 (Iowa 1978).

■ II. The Iowa exemptions to IESL were enacted to bring this state into conformity with the FUTA exemptions. Our General Assembly "plainly intended the state exception to have the same meaning as the identical federal exception." *Sugar Plum,* 285 N.W.2d at 24. Though this court is the ultimate determiner of Iowa law, *Ellis v. Iowa Dep't of Job Service,* 285 N.W.2d 153, 156 (Iowa 1979), we give unusual respect to decisions of the United States Supreme Court interpreting identical language in federal statutes. *Stromberg Hatchery v. Iowa Employment Security Comm'n,* 239 Iowa 1047, 1050, 33 N.W.2d 498, 501 (1948). Referring expressly to separately incorporated schools, that Court indicated the appropriate test for exemption from FUTA under section 3309(b)(1) of the Internal Revenue Code. The requirement, according to the plain meaning of the statutory language, is that the school (1) be operated primarily for a religious purpose and (2) be operated, supervised, controlled, or principally supported by a church or convention or association of churches. *St. Martin,* 451 U.S. at 782, 101 S.Ct. at 2148, 68 L.Ed.2d at 620. The Iowa statutory exemption is identical to the federal exemption. Iowa Code § 96.19(6)(a)(6)(a). The record establishes that the Lutheran schools are separately incorporated and have a legal existence apart from the churches that formed them. The test delineated in *St. Martin* is therefore applicable in determining the eligibility of the Lutheran schools for exemption under IESL.

■ The *St. Martin* Court had no occasion to apply the test; the petitioners there were all church owned and operated schools with no legal identity separate from the church. *But see California v. Grace Brethren Church,* —— U.S. ——, 102 S.Ct. 2498,

73 L.Ed.2d 93 (1982) (issue raised but case disposed of on procedural grounds). In this appeal, however, the issue is squarely before us. At the threshold we note that the test for exemption here is less stringent than the test for religious use for Iowa property tax exemption. Iowa Code § 427.-1(9) (property must be used "solely" for religious purpose).

A. In determining whether the Lutheran schools are "operated primarily for religious purposes," both the hearing officer and the district court, while recognizing that both educational and religious purposes are served by the schools, held the educational function dominant. The United States Supreme Court, however, recognizes the religious purpose of parochial schools. *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See also NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490, 501, 99 S.Ct. 1313, 1319, 59 L.Ed.2d 533, 542 (1979) (quoting *Lemon*). In *Lemon* the Court noted that church-related elementary and secondary schools have a "significant religious mission and that a substantial portion of their activities is religiously oriented." *Id.* at 613, 91 S.Ct. at 2111, 29 L.Ed.2d at 756. The Court went on to state:

> [T]he various characteristics of the schools make them "a powerful vehicle for transmitting the Catholic faith to the next generation." This process of inculcating religious doctrine is, of course, enhanced by the impressionable age of the pupils, in primary schools particularly. In short, parochial schools involve substantial religious activity and purpose.

*Id.* at 616, 91 S.Ct. at 2112, 29 L.Ed.2d at 757.

The Court stated similar views in *Meek v. Pittenger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975). It said:

> [I]t would simply ignore reality to attempt to separate secular educational functions from the predominantly religious role performed by many ... church-related ... schools....
>
> .... [R]eligion is so pervasive that a substantial portion of its functions are subsumed in the religious mission.

*Id.* at 365–66, 95 S.Ct. at 1763, 44 L.Ed.2d at 232. *See also Levitt v. Committee for Public Education and Religious Liberty,* 413 U.S. 472, 476, 93 S.Ct. 2814, 2817, 37 L.Ed.2d 736, 740 (1973) (parochial schools are traditionally religious).

Several state courts have had occasion to apply a corresponding exemption under their state statutes. In one case the court found Catholic schools of a diocese exempt under a provision equivalent to section (b)(1)(A) because the school employees were all "employed by a church"—the diocese. The court indicated it thought the church schools were operated primarily for religious purposes. *Begley v. Employment Security Comm'n of North Carolina,* 50 N.C. App. 432, 437, 274 S.E.2d 370, 374 (1981).

In another case the court granted exemption for religious school employees after finding them to be in the employ of a church and therefore meeting the (b)(1)(A) exemption. *Employment Division v. Archdiocese of Portland,* 42 Or.App. 421, 600 P.2d 926 (1979). Some of the schools involved were separately incorporated high schools, but the court attributed no significance to that fact. The court noted that the schools were operated primarily for religious purposes. *Id.* at 424, 600 P.2d at 927–28. *See also Grace Lutheran Church v. North Dakota Employment Security Bureau,* 294 N.W.2d 767, 773 (N.D.1980) (church schools have a religious purpose).

Two state courts faced with cases remarkably similar to the present one held that separately incorporated religious schools meet the exemption requirement of operation primarily for religious purposes. *Ursuline Academy v. Director of the Division of Employment Security,* 383 Mass. 882, 420 N.E.2d 326 (1981); *Christian School Ass'n of Greater Harrisburg v. Commonwealth Dep't of Labor and Industry,* 55 Pa.Cmwlth. 555, 423 A.2d 1340 (1980). In *Ursuline* the court found the primary function of the separately incorporated Catholic school was to run an elementary school with "a curriculum established in accordance with the tenets of the Roman Catholic

Church...." 383 Mass. at 883, 420 N.E.2d at 327. In addition, the school's curriculum "[m]ust be designed to carry out the mission of the ... Roman Catholic Church." *Id.* The court concluded that the school "[h]as embarked on a religious mission to inculcate Catholic youth with the tenets of the Roman Catholic Church ... and is being operated primarily for religious purposes." *Id.*

In the *Christian School* case the court held five separately incorporated religious schools met the first prong of the (b)(1)(B) exemption of primary religious purpose by finding that religious training pervaded even secular subjects. The court stated that "any attempt to dichotomize secular and religious training is *not* a fruitful method for determining their primary purpose." *Id.* at 565, 423 A.2d at 1345. *See also Sant Bani Ashram, Inc. v. New Hampshire Employment Security,* 121 N.H. 74, 79, 426 A.2d 34, 37 (1981) (court relied on departmental finding that a separately incorporated religious school was operated primarily for religious purposes); Comment, *Bringing Christian Schools Within the Scope of the Unemployment Compensation Laws: Statutory and Free Exercise Issues,* 25 Vill.L.Rev. 69, 94 (1980).

An Idaho decision involved a church-owned bakery, which employed only students from a school affiliated with a church in order to instill in them the church's tenet of the value of labor. *Department of Employment v. Champion Bake-N-Serve,* 100 Idaho 53, 592 P.2d 1370 (1979). The court held the bakery was operated primarily for religious purposes, even though it recognized the educational value of the bakery to the students. *Id.* at 55, 592 P.2d at 1372. *See also Cox v. Employment Division,* 47 Or.App. 641, 642, 614 P.2d 633, 634 (1980) (Salvation Army Thrift Store exempt from unemployment tax under section (b)(1) exemption) citing *Champion Bake-N-Serve*).

We note the exemption provides that the schools be "operated" primarily for religious purposes. Various pastors and board members of the Lutheran schools testified that the purpose for creating and operating the parochial schools is to rear children in the Christian faith "in all their schooling," and that the congregations are committed to this effort. One pastor testified that a major goal of the Lutheran Church-Missouri Synod is to promote Christian education through various agencies of the church including the parochial school. The articles of incorporation of at least one of the schools states that the purpose of the school is to provide students with a Christian education "consistent with the tenets and beliefs of the Lutheran Church, Missouri Synod." Tenets of this faith are incorporated into every aspect of all classes, and teachers work religion into all subjects as they teach. One teacher testified that the school's purpose is education in a permeating Christian atmosphere. Specific religious instruction is a part of the curriculum and religious ceremonies are held throughout the day. Membership in the Lutheran faith is a prerequisite to teach in the schools. A strong preference is given to those who have attended Missouri Synod colleges. Several pastors, teachers, and parents gave their opinions that the schools were being operated primarily for religious purposes.

Upon considering the evidence in the record and decisions from other states interpreting statutory unemployment tax exemptions identical to our own, we hold as a matter of law that the Lutheran schools are "operated primarily for religious purposes" as that phrase is used in section 96.-19(6)(a)(6)(a) of the Iowa Code.

B. The administrative hearing officer decided that the Lutheran schools met the second prong of the section (b)(1)(B) exemption by being "operated, controlled, supervised or principally supported by a church or convention or association of churches." Job Service did not question this decision and we do not consider it. We note, however, that the evidence shows the school boards are composed of members elected by and from each congregation and that the financial support for the schools comes from the churches which incorporated them.

III. Because we hold the Lutheran schools are exempt from IESL under sec-

tion 96.19(6)(a)(6)(a) of the Iowa Code, we do not reach the constitutional claims advanced in the appeal. We avoid constitutional issues except when necessary for disposition of a controversy. *Renda v. Polk County,* 319 N.W.2d 250, 253 (1982); *Salsbury Laboratories v. Iowa Department of Environmental Quality,* 276 N.W.2d 830, 837 (1979).

We also note that the Lutheran schools put in issue an agency's ability to determine the meaning of a religious function. We find no necessity to consider that issue.

We hold that the Lutheran schools are exempt from the tax.

REVERSED.

All Justices concur except REYNOLD-SON, C.J., and McGIVERIN and Le-GRAND, JJ., who dissent, and SCHULTZ, J., who takes no part.

McGIVERIN, Justice (dissenting).

I respectfully dissent from the result reached by the majority.

I would affirm the district court and hold that petitioner schools are not exempt from coverage under the Iowa Employment Security Law (I.E.S.L.) under Iowa Code section 96.19(6)(a)(6)(a) (1981) and the Federal Unemployment Security Act (F.U.T.A.), chapter 23 of the Internal Revenue Code. I also agree with the district court and the agency that coverage of petitioners under I.E.S.L. does not violate petitioners' rights under U.S. Const., Amend. 1, due to the compelling state interest to minimize "the crushing burden of involuntary unemployment." *Smith v. Iowa Employment Security Commission,* 212 N.W.2d 471, 472–73 (Iowa 1973).

I. *Are the separately incorporated schools "operated primarily for religious purposes?"* The petitioner schools were incorporated separately from the sponsoring churches. The question is whether the schools are "operated primarily for religious purposes" within Iowa Code section 96.-19(6)(a)(6)(a) and its equivalent in F.U.T.A., section 3309(b)(1)(A).

A. The majority relies heavily on *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981). However, two very important aspects of that case must be noted. First, unlike the schools before us, St. Martin's was not separately incorporated; noting that the diversity of the structure and organization of church groups makes it impossible to lay down a single rule to govern all church-related organizations, the Supreme Court limited its holding to "only schools that have no legal identity separate from a church." *Id.* at 782 n. 12, 101 S.Ct. at 2148 n. 12, 68 L.Ed.2d at 620 n. 12. Second, the Supreme Court was forced to overlook the legislative history which indicated an intent to bring employees such as those of the petitioner schools within F.U.T.A. because "indefinite congressional expressions cannot negate plain statutory language and cannot work a repeal or amendment by implication." *Id.* at 788, 101 S.Ct. at 2151, 68 L.Ed.2d at 623.

The "plain" statutory language before us requires us to focus on the terminology: "operated *primarily* for religious purposes." I.R.C. § 3309(b)(1)(B); Iowa Code § 96.-19(6)(a)(6)(a). Because this language is not ambiguous, it is appropriate to resort to legislative history to aid in its application.

Congress, quite explicitly delineated the limits of the section 3309(b)(1) exemption as applied to institutions of higher education. *This paragraph excludes services of persons where the employer is a church or convention or association of churches, but does not exclude certain services performed for an organization which may be religious in orientation unless it is operated primarily for religious purposes and is operated, supervised, controlled, or principally supported by a church (or convention or association of churches). Thus, the services of the janitor of a church would be excluded but services of a janitor for a separately incorporated college, although it may be church related, would be covered.* A college devoted primarily to preparing students for the ministry would be exempt, as would a novitiate or a house of study training candidates to become members of religious orders. On

the other hand, a church related (separately incorporated) charitable organization (such as, for example, an orphanage or a home for the aged) would not be considered under this paragraph to be operated primarily for religious purposes. H.R.Rep. No. 612, 91st Cong., 1st Sess. 44 (1969) (emphasis supplied). Identical language is found in S.Rep. No. 752, 91st Cong., 2d Sess. (1970) at 48–49, U.S.Code Cong. & Admin.News 1970, 3606. Thus, Congress clearly expected that the "operated primarily for religious purposes" language contained in section 3309(b)(1)(B) be narrowly construed, at least as applied to educational institutions.

B. I also agree with the district court's analysis in the present case on this issue, which was in part as follows:

It seems to the Court that the petitioners place emphasis, in effect, on the motive of the churches—arguably their motive was to advance their religion through these parochial schools. The statutory test, however, is whether the organizations (being the petitioner corporations themselves) are *operated* primarily for religious purposes. It seems clear that operation of the schools by the petitioner corporations was for both purposes. In interpreting this statute it is not required to find that the educational purpose was the only purpose. It is clear that churches would not operate educational institutions unless they were an apt vehicle for advancing and perpetuating the religion. Yet, in order to advance their religious cause through schools, the churches must also educate academically or secularly and must do so to the minimum degree required by state laws. Failing this, they would lose their students to the public schools. Quantitatively the academic or secular state-required education probably dominates but it is sufficient for the issue here that the educational purpose is at least as dominant as the religious purpose and thus it seems inescapable that it cannot be said that the primary purpose of operating the schools is religious.

Accordingly, I would hold that the petitioner schools are covered under I.E.S.L.

and F.U.T.A. and not entitled to an exemption therefrom. *See Christian School Ass'n of Greater Harrisburg v. Commonwealth Dep't of Labor and Industry,* 55 Pa.Cmwlth. 555, 570, 423 A.2d 1340, 1347–48 (1980) (Wilkinson, J., dissenting) (even though an English course could be taught using examples from scripture, the primary purpose continues to be teaching English).

Parochial schools must pass state standards and certification to be able to function. Their main job is to educate students. Otherwise, they would not and could not exist. Their students would be compelled to attend state certified public schools. Therefore, it follows that the petitioner schools cannot be "operated primarily for religious purposes." Educational purposes are primary or at least equal to religious purposes here.

II. *What is the practical effect?* As a practical matter, we should consider also the purpose and need of I.E.S.L. to minimize the trauma of involuntary unemployment on the employees of separately incorporated parochial schools.

Teachers who accept positions with state certified parochial schools frequently do so at a salary scale lower than that for comparable positions in public schools. Under the result reached by the majority, a teacher, who is terminated from employment with a separately incorporated parochial school, is not eligible for employment security benefits while unemployed and seeking work. The reason is because his former employer, the school, was exempted from I.E.S.L. coverage and did not have to pay into the I.E.S.L. insurance fund.

On the other hand, a teacher terminated from the state certified public school system would be eligible for employment security benefits because his employer *was* covered under I.E.S.L. This strange result is not compatible with the basic purpose of the I.E.S.L.

I would uphold the decisions of the district court and the agency.

REYNOLDSON, C.J., and LeGRAND, J., join in this dissent.