**Clifford E. OVERTON, Appellee,**

v.

**IOWA DEPARTMENT OF JOB SERVICE and Oscar Mayer & Company, Appellants.**

**No. 68950.**

Supreme Court of Iowa.

Sept. 21, 1983.

Larry L. Shepler of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellee.

Walter F. Maley, Blair H. Dewey and Edmond Schlak, Jr., Des Moines, for appellants.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON, and WOLLE, JJ.

HARRIS, Justice.

This is a proceeding for judicial review of an administrative determination that a wage earner must repay unemployment insurance benefits he received from Iowa job service (the agency). The district court reversed the administrative determination and we affirm.

The claimant went to work for Oscar Mayer (the employer) in April, 1968. Beginning in June, 1979, the claimant was laid off for five short periods. He was laid off only because he was "bumped" off his job by another employee with more seniority, not because of any physical problems.

Beginning with the first layoff the claimant sought and received unemployment insurance benefits from job service. The claims were submitted for twenty separate weeks. For each week he was laid off the claimant also received a sick leave check from the employer under what the company called its "limited layoff program." Under this program the employer would pay a laid off employee whatever sum was required, in addition to the employee's weekly unemployment check, to equal the amount that the employee would receive on sick leave. The additional payments were not reported to job service.

In August, 1980 a job service claims deputy notified the claimant that he was ineligible for benefits during the layoff periods. A notice of overpayment was issued. Although the grounds for job service's disapproval of the benefits shifted during the administrative process, the appeal board

eventually affirmed the disallowance because:

> The compensation paid to the claimant in the form of "limited sick pay assistance" was in fact wages within the meaning of Iowa Code chapter 96 (1981). Clearly the compensation was not sick pay nor was it intended to be. It was a form of supplemental subsistence to offset the difference between unemployment insurance and the amount that [the employee] would have received as wages. To be eligible for unemployment insurance within the meaning of Iowa law, one must in fact be performing no service and receiving no wages. In the [present] case, the claimant was being provided remuneration under the guise of "sick pay" when the same in fact was not the result of any illness or sickness. The record does not establish that the claimant has failed to meet the requirements of section 96.4(3) of the Iowa Code concerning his availability. The claimant was in fact available for work on the same terms and conditions that he previously worked [although] with certain restrictions. . . .
>
> In the [present] case, the purported agreement between the company and the union was in effect an attempt to circumvent the statute and provide its employees with remuneration under the guise of sick pay. The claimant was not being compensated for reasons of illness but was, in effect, being compensated pursuant to this agreement and as a result of his having been bumped by a person more senior to himself.

The district court on judicial review took the view that the employer's policy of voluntarily paying its employees "limited layoff" benefits in addition to their unemployment benefits was an *unapproved* supplemental unemployment benefit plan (SUB). The district court noted that, under 370 Iowa Administrative Code section 4.13(2)(j), job service's approved SUB's "are not considered as wages and are not deductible from job insurance." The district court could find no job service criteria for approving SUB's, however, and concluded that the

rule requiring agency approval was arbitrary and capricious.

Job service argues that criteria for approving SUB's can be found in 370 Iowa Administrative Code section 3.3(2)(e). Under this rule, job service claims, the employer's limited layoff plan would not be approved as a SUB plan. The agency therefore thinks the limited layoff benefits fall under the statutory definition of "wages."

I. General principles governing appellate review of agency action under Iowa Code section 17A.20 were explained in *Peoples Memorial Hospital v. Iowa Civil Rights Commission,* 322 N.W.2d 87, 91 (Iowa 1982). *See also* Iowa Code § 17A.19(8)(a). In addition to these general principles a number of administrative rules and other statutes are also implicated in this appeal. Job service accurately describes the statutory footing of the unemployment benefit program:

> The employment security law was enacted to minimize the economic burden of involuntary unemployment by encouraging employers to provide stable employment and by establishing a fund for a payment of unemployment benefits for persons unemployed through no fault of their own. Iowa Code § 96.2. To this end the state levied a tax payable on "wages" paid, both directly and indirectly, to all persons who had "employment" according to a variable formula described in Iowa Code section 96.7(3). Eligible and qualified persons who were "unemployed" could make application for benefits from this fund for unemployment benefits through the department. Iowa Code §§ 96.4, 96.5, 96.6(1). Fundamental to the concept of unemployment insurance is the notion that the applicant be "unemployed" in any week he claims benefits. Iowa Code §§ 96.3(2) and (3). To be "totally unemployed," the applicant must have no "wages" payable to him, and cannot have performed any services with respect to that same week. Iowa Code § 96.19(9)(a). A person might draw benefits even though employed to some degree and even though "wages" might be payable to him, however. Iowa Code

§ 96.19(9)(b). The definition of the term "wages" is all-important to both the functions of determining the payroll of the employer against which the tax is to be computed and to the determination of whether the applicant is unemployed when he seeks benefits on a weekly basis. Iowa Code § 96.19(12).

The term "wages" is broadly defined in Iowa Code section 96.19(12) as *"all remuneration for personal services,* including commissions and bonuses and cash value of all remuneration in any medium other than cash." (Emphasis added.) Under job service rules, a wide variety of compensation must be deducted from any unemployment benefits available. 370 Iowa Admin.Code §§ 4.13(1)(a)-(r).

In another rule certain forms of compensation are excluded from the definition of "wages." 370 Iowa Admin.Code §§ 4.13(2)(a)-(n). Of particular importance here is subparagraph (j) of this latter rule, the section the trial court found arbitrary and capricious. It provides that supplemental unemployment benefit plans "approved by the department are not considered as wages and are not deductible from job insurance." Another rule, cited by the agency on appeal but not pointed out to the trial court upon submission there, sets forth the features that an approved SUB plan must have.

Such plan or system must make provision for payment to a trust fund on behalf of individuals performing services for it. The account must be used to pay supplemental unemployment benefits to such employing unit's employees over and above any sum to which such employees might be entitled under the provisions of the state employment security law. Such payments to employees are not remuneration for the purposes of reducing or preventing payment of unemployment benefits. Such plan shall contain the following features:

(1) The employer pays into a separately established trust fund an amount per hour (or amount equivalent) worked by the employees covered by the agreement until the maximum amount called for has been reached.

(2) These payments made by the employer into the trust fund are not subject to recovery by the employer under any circumstances.

(3) The trust fund is to be used to pay supplemental unemployment benefits to employees over and above any sum to which they might be entitled under the provisions of a state employment security law.

(4) That the agreement shall provide that such employee is not entitled to receive any payment from the trust fund unless the employee is also concurrently eligible for benefits under a state employment security law.

(5) That the amount which an employee is entitled to receive from such trust fund fluctuates with the length of service with the employer.

(6) That the employee has no vested right in any of the monies paid into the trust fund except as the employee may qualify for benefits under the terms of the agreement.

(7) That any payment made to or on behalf of an employee be from and to a trust fund described in section 401(a) of the United States Internal Revenue Code title 26, of 1970 which is exempt from tax under section 501(a) of said Code.

370 Iowa Admin.Code § 3(2)(e). Job service gives no reason why the foregoing rule was not cited to the district court. The district court did not mention the rule in its opinion.

The impact of SUB payments on unemployment benefits has been considerable. It has been pointed out:

Under various state unemployment insurance statutes, the courts have considered the effect upon an unemployed worker's right to unemployment benefits of the receipt of money by such worker under various governmental programs and under nongovernmental programs and arrangements of various kinds. But supplemental unemployment benefit plans are distinct, factually at least, in several

ways. For one thing, these plans are designed to afford protection, although limited protection, against unemployment; the express purpose of payments under these private plans is to mitigate the economic consequences to an employee of unemployment. In addition, the operation of these plans is predicated upon receipt of state unemployment benefits by the unemployed worker, which amount is then supplemented by the employer in order to effectuate the guaranty which has been established by contract.

91 A.L.R.2d 1211, 1221–31 (1963). Courts and administrative agencies have ruled that payments under such plans are not to be construed as wages and unemployment benefits may not be denied or reduced because of the receipt of supplemental payments. *See id.* at 1211–15; 76 Am.Jur.2d *Unemployment Compensation* § 88 (1975); 81 C.J.S. *Social Security* § 216 (1977).

As noted, the agency does not consider SUB payments from an *approved* plan as wages; only payments from an unapproved plan, such as the one here, are considered wages. 370 Iowa Admin.Code § 4.13(2)(j). Job service argues "there was no SUB *plan,* but rather, a unilateral *policy* which employed a SUB mechanism to make a voluntary payment."

II. Any challenge to the agency's authority to adopt 370 Iowa Administrative Code section 4.13(2)(j), exempting only SUB plans *approved* by the agency, is to be considered in the light of the stated legislative purpose of the employment security law:

Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his or her family. The achievement of social security requires protection against this greatest hazard of our economic life.

This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance.

Iowa Code § 96.2.

■ Chapter 96 "is interpreted liberally to achieve the legislative goal of minimizing the burden of involuntary unemployment." *Community Lutheran School v. Iowa Department of Job Service,* 326 N.W.2d 286, 289 (Iowa 1982). The legislature never mentions SUB plans in chapter 96, but does delegate broad authority to the agency. Iowa Code § 96.11(1). All agency rulings pursuant to this authority are presumed valid. *See Hiserote Homes, Inc. v. Riedemann,* 277 N.W.2d 911, 913 (Iowa 1979).

The agency lists six features which it says are so common in SUB plans that they can be used to identify them. The six features seem plausible:

First, a fund is created, financed solely through employer contributions, usually computed on the basis of a few cents per man-hour worked, the rate being determined as a result of negotiation between labor and management. (Authority.) Second, all funds are administered by a trustee who receives the monies and manages the fund. (Authority.) Third, the fund cannot be invaded by the employer for any reason other than paying SUB. (Authorities.) Fourth, payments are made from the private reserve fund to eligible employees. (Authority.) Fifth, the SUB plan is administered according to guidelines reached as a product of negotiation between labor and management. Single employer plans are administered by the employer, who processes the application, determines eligibility, determines the amount of the SUB, and prepares the check. (Authority.) Multiemployer plans condition eligibility solely on the ability of the applicant to show a state unemployment check, and the administration of the plan is turned over to

a full-time staff. (Authorities.) Sixth, all funds provide for an appeal process under some kind of arbitration. (Authority.)

These six features compare with the first six of the seven factors in 370 Iowa Administrative Code section 3(2)(e). They reflect case law regarding the validity of SUB plans. *See* 76 Am.Jur.2d Unemployment Compensation § 88 (1975). The features, or requirements, are intended to ensure that a SUB plan is truly an unemployment compensation fund administered by an independent trustee, rather than remuneration for past services. *Compare Re Schuler,* 255 N.C. 559, 122 S.E.2d 393 (1961) *with United Steelworkers of America v. Doyle,* 168 Ohio St. 324, 154 N.E.2d 623 (1958).

We think the agency might, upon proper showing, enforce its regulation for SUB plans. Requiring an advance administrative "stamp of approval" of a plan would be sound public policy. The "stamp" would ensure employees the SUB plan for which they bargained, or upon which they counted, would not later be disqualified so that their SUB payments would be declared "wages." We conclude that job service had authority to adopt 370 Iowa Administrative Code section 4.13(2)(j).

III. Whether the agency has acted arbitrarily in applying the SUB rule is another question. The job service attack on this employer's SUB plan is on two fronts. The first complaint is that there is no showing that the plan qualifies under the rule. The agency's second complaint, surprisingly, is that the employer never sought approval of this plan.

We readily agree the record is woefully deficient in these respects. On the other hand we cannot understand why the deficiencies should work to the agency's advantage. The trial court observed that the agency demonstrated no established procedure by which an employer might seek approval of its SUB plan. This observation seems borne out in several ways. First, neither 370 Iowa Administrative Code section 4.13(2)(j), 370 Iowa Administrative Code section 3.3(2)(e) nor 370 Iowa Administrative Code chapter 2 (setting forth employers' responsibility for records and reports) provides for such a procedure. Second, 370 Iowa Administrative Code section 3.3(2)(e) sets forth criteria which would be fundamental to an agency determination under an existing approval procedure; yet the agency did not direct the district court's attention to this provision. Finally, the agency did not establish that submission and approval of SUB plans actually occur in practice. The absence of any established procedure by which the employer could seek approval of the plan is a strong indication that the SUB rule was applied arbitrarily.

There are other indications as well. On appeal to us this same rule, 370 Iowa Administrative Code section 3.3(2)(e), is the keystone of the agency's position. The fact, previously mentioned, that the rule was not cited to the district court may well have worked an injustice on the claimant. If the rule had been cited a different result may have been reached in district court, perhaps sparing the claimant the trouble and expense of appealing.

The entire course of this proceeding has been unsatisfactory. The claimant, who could scarcely be charged with deceit or bad faith in receiving the benefits, has faced theories that have shifted, changed, and expanded during the whole administrative and judicial review process. Before both the deputy hearing officer and the hearing officer the claimant was charged with having received sick pay while on a leave of absence he negotiated with his employer. He vigorously contended on appeal that the hearing officers' decisions were direct discrimination against a physically impaired workman (which claimant is). The appeal board salvaged the denial on the basis that the payments were wages.

It is both unfair and arbitrary to call upon the petitioner to face shifting theories. Under the circumstances here the agency cannot apply its SUB rule to disqualify the plan. AFFIRMED.