**BEVERLY HALL CORPORATION,**
Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted Nov. 21, 2014.

Decided Dec. 15, 2014.

John M. Heley, Quakertown, for petitioner.

Judith M. Gilroy, Assistant Counsel, Harrisburg, for respondent.

BEFORE: DAN PELLEGRINI, President Judge, and MARY HANNAH LEAVITT, Judge, and ANNE E. COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

Beverly Hall Corporation (Employer or BHC) petitions for review of an order of the Unemployment Compensation Board of Review (Board) overturning the Referee's denial of unemployment compensation benefits due to the Board's finding that BHC is not operated primarily for religious purposes and, therefore, that Denise L. Amos (Claimant) was not ineligible for benefits under Section 404($l$)(4)(8)(a)(ii) of the Unemployment Compensation Law (Law).[1] For the following reasons, we affirm.

I.

Claimant was employed as the manager of the Beatrice Franklin Biodynamic Farm (Farm) until May 2013. Following her separation, she filed a claim for benefits which the Unemployment Compensation Service Center (Service Center) denied, finding that Claimant failed to establish her financial eligibility for benefits under Section 404 of the Law, 43 P.S. § 753.

II.

At the hearing before the Referee,[2] Michael Ostrowski, the Department's repre-

---

1. Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §§ 751–914. Section 404($l$)(4)(8)(a)(ii) of the Law excludes from the definition of "employment" "[s]ervice performed in the employ of ... (ii) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches." 43 P.S. § 753($l$)(4)(8)(a)(ii), declared unconstitutional in part by Christian

School Association of Greater Harrisburg v. Department of Labor & Industry, 55 Pa. Cmwlth. 555, 423 A.2d 1340, 1347 (1980) (en banc).

2. The notice of hearing advised all parties, "If you have documents to be entered or testified from at this hearing, you must submit them to the Referee Office listed above at least five (5) days BEFORE THE HEARING." (Certified Record [C.R.] Notice of Hearing (Sept. 11, 2013), at 1.) It further stated, "If you wish to testify from a document at a telephone hear-

sentative, testified telephonically that the Service Center found Claimant financially ineligible for benefits because the purported Employer, BHC, was a religious organization which did not elect coverage and, therefore, Claimant's employment was excluded pursuant to Section 404(*l*)(4)(8)(a)(ii) of the Law, 43 P.S. § 753(*l*)(4)(8)(a)(ii). In determining whether BHC constituted a religious organization, Ostrowski stated that he researched the corporation's purpose and whether it was required to report its employees' gross wages.

In support of her appeal, Claimant testified that she was employed by BHC as the Farm manager, through which she oversaw Farm operations and employees. She stated that although BHC was associated with the Church of Illumination (Church) at which members of the Rosicrucian Fraternity (Fraternity) worship, none of her job responsibilities were related to the Fraternity and she never believed that she was working for the Church. She explained that although she became a member of the Fraternity in 2009 or 2010, not all BHC employees are members. She described the Farm as a one-acre property on which she maintained organic vegetable gardens for a community-supported agriculture (CSA) program and raised chickens. Specifically, she explained, "We grew vegetables, and people would purchase a share, and we would supply them with their vegetables every Friday, when possible." (Reproduced Record [R.R.] at 16a.) She stated that members of the CSA, comprised of both non-members and members of the Fraternity, prepaid for and received weekly shares of the Farm's produce, with the remaining produce as well as the eggs

being sold to the public and the proceeds going to BHC.

On cross-examination, Claimant conceded that pursuant to the request of William Kracht, D.O. (Dr. Kracht), the Fraternity's Supreme Grandmaster and the Church's Director, the Farm employed the biodynamic farming method, meaning that its produce was grown organically and without pesticides. She acknowledged that as a member of the Fraternity, she read lessons and met with Dr. Kracht, personally, but she denied the existence of any religious tenant requiring a Rosicrucian to eat only organically produced food. She also agreed that the proceeds generated by the Farm were provided to BHC and stated that her records showed that the Farm operated at a profit. Nonetheless, she admitted that she would not be surprised to learn that BHC lost tens of thousands of dollars from the Farm.

Claimant also presented the testimony of Dr. Kracht, as if on cross-examination. Dr. Kracht described the BHC as "the organization that does the—all of the nontheological work of the [C]hurch" and as "the entity that runs the logistics of the [C]hurch" by "maintaining the grounds, the buildings, [and] hiring the personnel needed to perform the [C]hurch functions." (*Id.* at 4a.) He stated that members of the Church may attend any other church and need not be members of the Fraternity, but that members of Fraternity are, by necessity, members of the Church. He described the religious tenants of the Church and Fraternity as requiring "full attention to all parts of our being: the health and purity of our body, the reason and advancement of our mind, and the spirituality of our soul." (R.R. at 35a.)

ing, that document must be submitted to the Referee's office at least 5 days before the hearing." (*Id.* at 2.) The notice stated in bold print that both Claimant and Employer would

attend the hearing in-person but that the Department of Labor and Industry (Department)'s representative would attend telephonically.

He testified that these principles are embodied in the Fraternity's symbol, the pyramid, which is displayed throughout the grounds on which the Church and BHC are located.

Dr. Kracht conceded that Claimant's paychecks were issued by BHC without reference to the Church and that BHC has had numerous employees who were not Fraternity members. Still, he insisted that the Farm and the CSA existed for a religious purpose. Regarding the excess vegetables, he explained that they were sold at a farm stand in exchange for a donation to the BHC which "owned the farm and ran the farm and took the expenses and the risks of the farm." (*Id.* at 40a.).

On direct examination, Dr. Kracht stated that BHC's Board of Directors is composed of nine voting members and two or three non-voting members, all of whom are elected annually by the Church's public members. He described the religious mission of the Farm:

> The Fraternity and the Church of Illumination ha[ve], since [their] beginning[s], emphasized the importance of the purity of the body as it relates to the growth and advancement of the soul. As that was alluded to earlier in the— one of the meanings of the size of the pyramid. We are taught in Corinthians, in the New Testament, that we are the temples of the living God, and we are not to defile that temple, and the [C]hurch takes that quite seriously and to heart.... With the essence that the body is the temple of the soul and the God within us, the tenants of the [C]hurch [are] to (inaudible), to the best of one's ability, toxins, chemicals, and

poisons that could affect the health and the health of the body, which is our spiritual temple. It has advocated organic foods since Dr. Clymer's books in the early 1900s and 1920s.

\* \* \*

> Due to the increasing complexity of the ability to find what we consider to be organic, non-chemical, pesticide-free, spiritual food, for our temple, in 2009, Beverly Hall Corporation [B]oard agreed to start a biodynamic—Beatrice Franklin Biodynamic Farm.

(*Id.* at 44a–45a.)

Dr. Kracht further explained that the Farm endeavors to provide Church members pure foods to assist them in adhering to the Church's tenants and to aid those in the community regardless of their religion. He stated that the Farm is not profitable and that since its start, BHC has provided approximately $200,000.00 in subsidies. Additionally, he testified that the Internal Revenue Service (IRS) made a determination in 1971 that BHC constituted a "church," and that since that time, the Commonwealth of Pennsylvania re-approved and recertified its non-profit status.

During the hearing, both Claimant and Employer objected to the Referee's rulings which precluded them from introducing documents that were not submitted five days in advance of the hearing when the Department did not consent to their use. (*Id.* at 14a–15a.)[3]

Based on the testimony presented at the hearing, the Referee affirmed the Service Center's determination that Claimant was ineligible for benefits under Section 404($l$)(4)(8)(a)(ii) of the Law, 43 P.S. § 753($l$)(4)(8)(a)(ii), finding that she was employed by BHC, which is operated primarily for religious purposes because: (1)

---

**3.** Specifically, when asked if he would consent to the introduction of the documents, Mr. Ostrowski stated, "I never had to be called before. I would rather the documents be on record. I would rather have copies of them in front of me, just to cover myself." (R.R. at 16a.).

"it owns and maintains the Farm, used to produce organic produce satisfying one of the tenants of the Rosicrucian Fraternity's religion"; (2) BHC is "the organization that employs individuals necessary to maintain the physical buildings and grounds of the Rosicrucian Fraternity, and those buildings and grounds are integral to the practice of the religion"; and (3) BHC's Board of Directors is elected by members of the Fraternity and therefore controlled by the Fraternity. (C.R., Referee's Decision/Order, at 2.)

■ Claimant appealed to the Board, arguing that BHC is not operated primarily for religious purposes and that the Referee erred in excluding Claimant's and Employer's documents from evidence at the hearing. Emphasizing that "BHC is the business arm of the [Fraternity] for purposes of paying and managing employees to maintain religious properties used to practice that religion" and that "[t]he purpose of the BHC is to manage the financial and personnel aspects of the [C]hurch's operations," the Board reversed, finding that Claimant was not ineligible for benefits pursuant to Section 404($l$)(4)(8)(a)(ii) of the Law, 43 P.S. § 753($l$)(4)(8)(a)(ii).[4] Regarding the excluded documents, the Board found that the notice of hearing indicated that the Department's representative would be testifying telephonically and, therefore, the documents were properly excluded because they were not submitted in advance of the hearing in compliance with the Department's telephone regulations.[5] This appeal followed.[6]

## III.

### A.

■ Employer initially contends that the Board erred in affirming the Referee's

4. Subsequently, the Office of Unemployment Compensation Tax Services requested that the Board reconsider its decision and affirm the Referee, contending that BHC does, in fact, operate primarily for religious purposes. The Board denied this request.

5. The Department's regulations provide:

§ 101.130. Notice of testimony by telephone and use of documents.

(a) When testimony is to be taken, the tribunal will mail the notice of hearing to the parties.... The hearing notice will indicate:

\* \* \*

(2) The names of counsel, authorized agent, parties and witnesses, if known, who are scheduled to appear or testify by telephone.

(3) The deadline by which the tribunal is to receive documents, if any, from all parties.

\* \* \*

(e) When any testimony will be given from or with the aid of a document not previously distributed to the parties by the tribunal, the party expecting to introduce the document shall deliver it to the tribunal, and the tribunal shall distribute it to each other party and, if known, counsel or authorized agent before or at the beginning of the testimony. The tribunal may require that the documents be delivered up to 5 days in advance of the hearing.

34 Pa.Code § 101.130(a)(2),(3), (e); *see also* 34 Pa.Code § 101.131(h) ("A document not provided as required by § 101.130(e) ... may not be admitted nor testimony given or taken from it unless consent has been requested from and given by all parties. Testimony taken or given in violation of this subsection will be excluded from consideration, as will the document.").

6. Our review is limited to determining whether the Board's findings of fact are supported by substantial evidence, whether errors of law were committed, or whether agency procedure or constitutional rights were violated. *Gillins v. Unemployment Compensation Board of Review*, 534 Pa. 590, 633 A.2d 1150, 1153 (1993). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n. 3 (Pa.Cmwlth.2013), *appeal denied*, —— Pa. ——, 95 A.3d 278 (2014).

exclusion of documentary evidence not submitted in advance of the hearing. In support of this argument, Employer contends that due to previous scheduling issues,[7] it was unaware that any party would be participating telephonically at the hearing and, therefore, it did not submit the documents in advance. Specifically, Employer argues that it believed the telephonic hearing was scheduled only for the benefit of Employer's previous counsel who was located in California, and that when Employer retained new counsel who would appear in person, there was no need for a telephonic hearing. Employer suggests that it received no notice that the Department would be participating by telephone because none of the notices of continuation so advised.

A review of the record belies this argument. Indeed, every hearing notice that was sent to the parties indicated in bold print that the Department's agent would be participating by telephone. This notation appears on the last page of the notice below the heading "ADDITIONAL INTERESTED PARTIES AND REPRESENTATIVES," under which each party is listed as is the means by which each party will participate. Further, it is not surprising that the notices of continuation did not advise the parties that the Department would participate telephonically, since those notices did not establish a date or time for the rescheduled hearings but merely cancelled the prior hearings. Because each and every notice of hearing clearly indicated that the Department's agent intended to participate by telephone, Employer had more than sufficient notice of the same, regardless of whether it or other counsel read the notices carefully or had experienced such a hearing during their practice. Although 34 Pa.Code § 101.131(h) enabled the Referee to admit the documents even though they were not provided in compliance with 34 Pa.Code § 101.130(e) *if* consent was given by all parties, the Department objected to the introduction of this evidence and, therefore, the Referee was required to exclude the documents from consideration. As such, the Board did not err in affirming the Referee's exclusion of the evidence.

## B.

■ Next, Employer argues that Claimant failed to satisfy her burden of establishing that BHC is not operated primarily for religious purposes.[8] Employer relies

---

7. The hearing was initially scheduled for August 29, 2013, with all parties attending in person except for the Department, whose agent would attend by telephone. The hearing notice also indicated that Employer's attorney would attend in person. A subsequent notice of continuance was sent, advising the parties that the hearing would be rescheduled to a later date. After that, a second notice of hearing advised the parties that the matter was rescheduled to September 17, 2013, and again indicated that all parties would attend in person, except for the Department's agent. In that notice, the "in person" designation below Employer's attorney's name was removed. Following another notice of continuance, the hearing was again rescheduled to September 25, 2013, and the third notice of hearing indicated that Claimant, Employer and Employer's attorney would attend in person, with the Department's agent attending telephonically.

8. At the outset, we note that courts do not apply the second prong of Section 404(*l*)(4)(8)(a)(ii)'s test requiring an organization to be "operated, supervised, controlled or principally supported by a church or convention or association of churches," as that prong has been declared unconstitutional. *Christian School Association of Greater Harrisburg v. Department of Labor & Industry*, 55 Pa.Cmwlth. 555, 423 A.2d 1340, 1347 (1980) (*en banc*). Therefore, our inquiry is limited to the first prong. *See Imani Christian Academy v. Unemployment Compensation Board of Review*, 42 A.3d 1171, 1174–75 (Pa.Cmwlth. 2012).

on *Livny v. Unemployment Compensation Board of Review*, 60 A.3d 594, 596 (Pa. Cmwlth.2013), a case in which we found that substantial evidence supported the Board's finding that a Jewish school was operated primarily for religious purposes when evidence demonstrated that the school was a tax-exempt religious organization under the Internal Revenue Code, that it was formed with the intent of being a religious organization and providing religious education, that its stated mission was to provide "a richly fortified Jewish education," that religion and prayer were included throughout the curriculum, that the school was registered with the Commonwealth of Pennsylvania as a non-profit religious organization, and that the school received its direction and control from a religious organization. *Id.*

Conversely, Claimant relies upon *Imani Christian Academy v. Unemployment Compensation Board of Review*, 42 A.3d 1171 (Pa.Cmwlth.2012) and *Grau v. Unemployment Compensation Board of Review*, 2012 WL 8668282 (Pa.Cmwlth., No. 298 C.D.2012, filed August 13, 2012), to bolster her argument that the Board's finding is supported by substantial evidence. In *Imani Christian Academy*, we affirmed the Board's determination that an employer did not operate primarily for religious purposes. 42 A.3d at 1175–76. Unlike in *Livny*, in *Imani*, we noted that the record before the Referee included "little evidence of the extent to which the religious underpinnings pervade the curriculum." *Id.*

Further, in *Grau*, an unreported and non-binding opinion, we held that the Board's conclusion that a non-profit corporation operated primarily for religious pur-

poses was unsupported by substantial evidence when the corporation's primary function was "providing financial support to the Church through the investment and management of its endowment" because "[a] nonprofit corporation responsible solely for managing the administration and finances of a religious organization is not 'operated primarily for religious purposes.'" *Grau*, 2012 WL 8668282, at *2 (Pa.Cmwlth., No. 298 C.D.2012, filed August 13, 2012) (internal citation omitted).

In this case, the pertinent inquiry is whether BHC, Claimant's purported Employer, operated primarily for religious purposes. To this extent, Dr. Kracht testified that BHC is "the entity that runs the logistics of the [C]hurch" by "maintaining the grounds, the buildings, [and] hiring the personnel needed to perform the [C]hurch functions." (R.R. at 4a.) In other words, as he described, BHC does the Church's non-theological work. Membership in the Church is not a prerequisite for employment with BHC, even though the Church's members select BHC's Board of Directors and even though the IRS determined that BHC was a "church."

Unlike in *Livny*,[9] here, the only testimony regarding the purpose of BHC clearly establishes that it was created not for religious purposes, but to perform the administrative, non-theological work of the Church, such as ground and building maintenance and hiring. Although Employer presented evidence regarding the extent to which the Church and Fraternity's religious tenants influenced the Farm's operations, there was "little evidence of the extent to which the religious underpinnings pervade" BHC's administrative operations. *Imani Christian Academy*, 42 A.3d at

---

9. Notably, in *Livny*, we addressed whether substantial evidence supported the Board's finding that a school *was* operated primarily for religious purposes. That inquiry differs from the present one, in which we must determine if substantial evidence supports the opposite conclusion.

1175. Moreover, BHC's close financial connection to the Farm, Church and Fraternity is insufficient to exempt BHC because "[a] nonprofit corporation responsible solely for managing the administration and finances of a religious organization is not 'operated primarily for religious purposes.'" *Grau*, 2012 WL 8668282, at *6 (Pa.Cmwlth., No. 298 C.D.2012, filed August 13, 2012) (internal citation omitted). Based on Dr. Kracht's testimony alone, the Board's finding that BHC did not operate primarily for religious purposes is supported by substantial evidence.[10]

Accordingly, because substantial evidence supports the finding that BHC is not operated primarily for religious purposes, the Board's decision that Claimant is not ineligible for benefits pursuant to Section 404(*l*)(4)(8)(a)(ii) of the Law is affirmed.

### ORDER

AND NOW, this *15th* day of *December*, 2014, the order of the Unemployment Compensation Board of Review dated March 7, 2014, at No. B–561448, is affirmed.

---

10. Employer also contends that the doctrine of *res judicata* bars a determination that BHC does not operate primarily for religious purposes because this Court previously ruled that BHC is an organization operated primarily for religious purposes in *Poesnecker v. Ricchio*, 158 Pa.Cmwlth. 459, 631 A.2d 1097 (1993), *appeal denied*, 538 Pa. 651, 647 A.2d 905 (1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 632 (1995). *Res judi-cata* does not apply, however, because Employer has failed to demonstrate that Claimant was in privity with any party to the prior action. *See J.S. v. Bethlehem Area School District*, 794 A.2d 936, 939 (Pa.Cmwlth.2002), *appeal denied*, 572 Pa. 760, 818 A.2d 506 (2003). Even if the doctrine did apply, it would not bar the present litigation because it did not rule upon BHC's primary function.