IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beau McGroarty,                              :
                    Petitioner               :
                                             :
    v.                                       :    No. 320 C.D. 2021
                                             :    SUBMITTED:  October 15, 2021
Unemployment Compensation                    :
Board of Review,                             :
                    Respondent               :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  February 1, 2022

Beau McGroarty (Claimant) petitions for review of the March 5, 2021 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant is ineligible for UC benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] because he was discharged from work for willful misconduct. We affirm the Board's Order.

## Background

Claimant worked as a full-time equipment operator for Rexer's Drilling (Employer) from March 28, 2019 through June 16, 2020. Bd.'s Finding of Fact (F.F.) No. 1. Employer operates a rock quarry regulated by the United States Department of Labor Mine Safety and Health Administration (MSHA). *Id.* No. 2; Notes of Testimony

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the Law provides that a claimant "shall be ineligible for compensation for any week . . . [i]n which his employment is due to his discharge . . . from work for willful misconduct connected with his work." 43 P.S. § 802(e).

(N.T.), 12/9/20, at 10. Claimant's primary job duty was to operate excavation equipment and a rock loader. Bd.'s F.F. No. 3.

Employer has a policy prohibiting cell phone use while operating equipment. *Id.* No. 4. Approximately one month before Claimant's separation from employment, Employer instituted the cell phone policy because Employer's owner had observed Claimant using his cell phone while operating equipment on multiple occasions. *Id.* No. 5. Eventually, Employer's owner directed Claimant to leave his cell phone in his truck due to Employer's concerns that Claimant would operate equipment while using his cell phone. *Id.*

On June 16, 2020, Employer's owner was driving a vehicle in the quarry and observed an unattended rock crushing machine in operation. *Id.* No. 6. Employer's owner parked his vehicle and shut off the machine. *Id.* No. 7. Employer's owner then observed Claimant using his cell phone while seated in Employer's dump truck, instead of watching to ensure that the crushing machine was working properly and not overloaded. *Id.* No. 8; Bd.'s Order, 3/5/21, at 1.

Employer's owner confronted Claimant about his job duties and cell phone use while operating company equipment. Bd.'s F.F. No. 9. Employer's owner directed Claimant to grab a shovel and start shoveling gravel because Employer's crushing machine had malfunctioned and had to be shut down. *Id.* No. 10; N.T., 12/9/20, at 12. Claimant walked off the job instead of remaining on the job. Bd.'s F.F. No. 11. Employer had continuing work available for Claimant had he not walked off the job. *Id.* No. 12.

Claimant filed a claim for UC benefits, which the local UC Service Center granted. The Service Center initially noted that the claim record contained conflicting information regarding the nature of Claimant's separation from employment – i.e.,

whether he voluntarily quit or was discharged. Record (R.) Item No. 7. The Service Center ultimately concluded that Employer discharged Claimant, because the Service Center found that Employer told Claimant he could not do his job, yelled at him for parking in the wrong location, and told him to leave the premises. *Id.* The Service Center concluded, however, that Employer failed to establish that Claimant committed disqualifying willful misconduct under Section 402(e) of the Law. *Id.*

Employer appealed to the Referee, who held a telephone hearing on December 9, 2020. Employer's owner, Richard Rexer, testified that Claimant's job duty was to safely operate equipment in Employer's quarry. N.T., 12/9/20, at 11. Mr. Rexer testified that Employer has a policy prohibiting cell phone use while in the quarry and requiring employees to leave their cell phones in their personal vehicles. *Id.* Mr. Rexer explained that Employer implemented the policy due to Claimant, because Claimant "ha[d] a major problem with cell phone[]" use at work. *Id.* at 11, 14. Mr. Rexer elaborated as follows:

> [Claimant] would be riding along as a passenger in a truck going somewhere on his cell phone. He would fall asleep and wake up with his phone in [his] hand. There is a major problem here. And I'm not pointing the finger here, I'm pointing at everybody. There is a major problem in our industry with cell phones. And you're not allowed to use a cell phone unless you have hands-off. It's fine with emergencies. I don't care if it's an emergency. . . . I'm not paying employees to be distracted by using their cell phones for personal Facebook things. They know it's a violation. It's a severe violation.

*Id.* at 13. Mr. Rexer further testified that Claimant was aware of the cell phone prohibition because it was part of the MSHA training he received. *Id.* at 11. He testified that he had problems with Claimant's cell phone use "[e]very day" until the incident in question. *Id.* at 14. Mr. Rexer had previously confronted Claimant about

3

his cell phone use and specifically instructed Claimant to leave his cell phone in his truck while at work. *Id.* at 16.

Mr. Rexer testified that on June 16, 2020, he drove into the quarry and observed an unattended rock crushing machine in operation, which had begun to clog. *Id.* at 12. Mr. Rexer testified:

> I went in[to the quarry] with the dump truck just to pick up a load of material . . . . I pull in, the material is almost up to the belt[] [of the machine]. Now [if] the material hits the belt, it will be a catastrophic failure. If you stop the process, it's a major process to start. Now everything works fine if everybody does their job[s]. I pull in, and there's [Claimant] in his dump truck on his phone texting or something. He wasn't talking, he was looking down. I'm blowing the airhorn. There's a lot of noise, okay? I'm on a CB [radio] yelling at him. And I'm blowing the airhorn, okay? And he just sits there and texts the whole time. I get out of the truck, and I run for the excavator to get the material off of there. The machine is going to move fast. I get out, I run out, I hit the emergency stop. . . . [F]inally when I start moving the excavator, [Claimant] looks up, . . . he's ignoring his job, and we're paying him to do a job he's ignoring. He's also in a commercial vehicle, which is outlawed with a cell phone[] . . . . So, he broke all the rules. And I said, well, what are you doing? He couldn't hear a word I said anyway, I just raised my hands up. And then he got out and started yelling at me. And I said, get a shovel. And he just left, and that's basically all.

*Id.* at 12-13. Mr. Rexer explained that leaving equipment unattended "is a major safety issue to all the men that work" in the quarry. *Id.* at 13. He testified that Claimant's cell phone use was "so dangerous" because "we are running extremely heavy equipment" and "[y]our mind has to be on your tasks." *Id.* at 14.

Mr. Rexer further testified that, during their encounter, he did not tell Claimant he was discharged. *Id.* at 13. Rather, he directed Claimant to "get a shovel" because they were "going to spend the whole day shoveling the machine out"; however, Claimant "just left" the quarry and did not return. *Id.* Mr. Rexer testified that Claimant

4

"left all the machinery . . . [and] left the truck running . . . , which is another violation. . . . I thought he went to get a shovel . . . ." *Id.* at 14. Mr. Rexer testified that continuing work would have been available to Claimant had he not left that day. *Id.* at 13-14. Mr. Rexer clarified:

> [I]f [Claimant] would have come to work, we could have sat down and discussed the problem. We would have discussed the situation, what happened, and how we're going to prevent it from happening [again].

*Id.* at 15.

Claimant testified that on the day in question, Mr. Rexer "came running over to the excavator, which [Claimant] had left running." *Id.* at 18. Claimant testified, however, that he "didn't have [his] cell phone on because it was dead." *Id.* Claimant testified that Mr. Rexer had called Claimant on his cell phone earlier that day "to tell [Claimant that he] was dumping the material wrong." *Id.* According to Claimant, Mr. Rexer "had called [him] multiple times [on his cell phone], even after he said th[at] cell phones were prohibited." *Id.*

Claimant testified that when Mr. Rexer approached him,

> I stayed in the [dump] truck and just was waiting. I did have my head down. It was hot. There's no air conditioning. And I just had my head resting on my hands. Well, then [Mr. Rexer] ran over while I got out . . . . He ran up and hit the crusher. He stopped, and he was swearing. . . . [T]he crusher was stopped. It was off. I could hear every word he was saying. And he was, at that point, maybe 40 feet from me. He yelled at me. Told me I was parked in the wrong place. Then I tried to explain to him that I had to park there because . . . [t]he loader wouldn't come through to the crusher if I was in the way. And he was screaming and yelling at me, told me I can't do my job, just go home. So, I walked home.

*Id.* at 19.  When asked if Mr. Rexer told him he was terminated, Claimant replied, "No, he did not say I was terminated.  He told me to go home, but he didn't contact me later." *Id.*

Later in the hearing, Claimant clarified that when Mr. Rexer approached Claimant's dump truck, Mr. Rexer "had his hands up, and he was swearing." *Id.* at 25.  When Claimant tried to tell Mr. Rexer that he had to park in that location, Mr. Rexer said, "[Y]ou can't do your f***ing job, just go home." *Id.*  Claimant testified that at that time, he "was definitely within under 20 feet from [Mr. Rexer], and the other crusher was shut down[,]" and he could hear everything Mr. Rexer said. *Id.*  Claimant then testified:  "I wasn't on my cell phone at the time because it was broke, . . . it was shut off.  It was restarted." *Id.*

Daniel Wheeler, Claimant's former co-worker who was present in Employer's quarry on the day in question, also testified on Claimant's behalf.  Mr. Wheeler testified that when he worked for Employer,

> I carried my cell phone with me because of the lack of communication, but I never used it unless I had to.  If it wasn't for that, there wouldn't have been any communication whatsoever in the [quarry], and that's an MSHA violation.  Yes, we were told that we couldn't have our cell phones, but I took mine down there, and it was in my pocket, and I very seldom ever used it.

*Id.* at 21.

Mr. Wheeler then testified about the interaction between Claimant and Mr. Rexer on June 16, 2020.  He testified:  "I don't know the words that were passed between [Claimant] and . . . Mr. Rexer.  I couldn't hear . . . because of the noise.  I was further away.  But [Mr. Rexer] did inform me that day that he did fire [Claimant] . . . ." *Id.*  Mr. Wheeler clarified that he "was informed by Mr. Rexer that [Claimant] was fired

6

for being negligent, for not moving the pile [of gravel]. And the crusher did back up, and it did destroy the belt that was on the crusher from [the pile] not being moved." *Id.*

Following the hearing, the Referee reversed the Service Center's decision. The Referee concluded:

> After a careful review of the testimony and the documentary evidence in the record, *the [R]eferee resolves all credibility in favor of [E]mployer and finds [E]mployer has sustained [its] burden.* The [R]eferee finds that Section 402[](b) of the Law[, 43 P.S. § 802(b) (relating to voluntary quit),] would be the applicable [s]ection of [the] Law given the facts of this case. However, the parties would not grant the [R]eferee permission to consider Section 402[](b) of the Law. As such, the [R]eferee will rule in accordance with Section 402[](e) of the Law.[2] *In lieu of the fact [that] the [R]eferee finds [E]mployer's owner provided credible testimony that [C]laimant was operating equipment while using his cell phone in violation of [E]mployer's policy and in violation of [E]mployer's owner's directive prohibiting cell phone usage while using company equipment, the [R]eferee finds [C]laimant failed to provide any justifiable cause for his actions. Furthermore, the [R]eferee finds that [C]laimant failed to provide any justifiable cause for walking off the job after . . . [E]mployer's*

---

[2] The Department of Labor and Industry's (Department) regulations provide:

> When an appeal is taken from a decision of the Department, the Department shall be deemed to have ruled upon all matters and questions pertaining to the claim. In hearing the appeal the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed. However, *any issue in the case may, with the approval of the parties, be heard*, if the speedy administration of justice, without prejudice to any party, will be substantially served thereby.

34 Pa. Code § 101.87 (emphasis added). At the conclusion of the Referee's hearing, the parties engaged in an on-the-record discussion with the Referee about which section of the Law should be considered in determining Claimant's eligibility for UC benefits. *See* N.T., 12/9/20, at 26-28. Ultimately, Claimant did not consent to the Referee's consideration of Section 402(b) of the Law, only Section 402(e), *see id.* at 28, and Section 402(e) was the basis of both the Referee's and the Board's decisions. Neither party challenges the Board's failure to consider Section 402(b) on appeal. Thus, we limit our appellate review to whether the Board properly concluded that Claimant is ineligible for UC benefits under Section 402(e) of the Law.

7

*owner issued a direct order to [C]laimant to pick up a shovel to assist [E]mployer's owner in cleaning up stone and gravel.* Based upon the testimony and the documentary evidence in the record, the [R]eferee finds [C]laimant's actions rise to the level of willful misconduct.

Ref.'s Order, 12/15/20, at 3 (emphasis added). Therefore, the Referee concluded that Claimant is ineligible for UC benefits under Section 402(e) of the Law.

Claimant appealed to the Board, which adopted and incorporated the Referee's findings of fact and conclusions of law, as modified,[3] and affirmed the Referee's decision. The Board specifically discredited Claimant's testimony that he was not operating the rock crushing machine because he was sitting in a dump truck at the time the machine malfunctioned. Bd.'s Order, 3/5/21, at 1. The Board determined, based on Mr. Rexer's credible testimony, that Claimant was responsible for operating both the crushing machine and the dump truck. *Id.* The Board further noted that Claimant admitted that he left the crushing machine running while he was in the dump truck. *Id.* The Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.*

Next, the Board denied Claimant's request for a remand hearing to present additional evidence. *Id.* Claimant sought to present evidence that the MSHA requires communication at the job site, as well as cell phone records allegedly showing that Mr. Rexer had previously contacted Claimant at work on his personal cell phone. The Board explained its reasons for denying a remand hearing as follows:

> *[C]laimant was duly advised via the hearing notice to bring all necessary evidence to the hearing and he has not established good cause for his failure to do so.* [C]laimant also complains that his original witness was unable to testify due to bad [phone] service and he would like to present testimony from this witness. When the Referee called this witness, the

---

[3] The Board amended one of the Referee's findings of fact "to reflect that [C]laimant was using his cell phone while in [E]mployer's dump truck." Bd.'s Order, 3/5/21, at 1.

Referee received a voicemail message stating the witness was not available. *[C]laimant was duly advised via the hearing notice that it was his responsibility to arrange for his witness to be present at the time of the hearing. Bad [phone] service is not good cause to grant a remand for additional witness testimony. [C]laimant has not advanced legally sufficient reasons for granting a remand hearing[] . . . .*

*Id.* (emphasis added). Claimant now petitions this Court for review.[4]

## Analysis

Our courts have defined "willful misconduct" as: (a) a wanton or willful disregard of the employer's interests; (b) a deliberate violation of the employer's rules; (c) a disregard for the standards of behavior that the employer rightfully can expect of its employees; or (d) negligence indicating an intentional disregard of the employer's interests or the employee's duties or obligations. *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 425 (Pa. 2003). The employer bears the burden of proving that the claimant was discharged for willful misconduct. *Walsh v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008).

An employer seeking to prove willful misconduct by showing that the claimant violated a work rule or policy must prove the existence of the rule or policy and the claimant's knowledge and violation thereof. *Cnty. of Allegheny Orphans' Ct./Fifth Judicial Dist. v. Unemployment Comp. Bd. of Rev.*, 220 A.3d 730, 737 (Pa. Cmwlth. 2019). Once the employer satisfies its burden, the burden shifts to the claimant to prove that he had good cause for his actions. *Id.* Good cause is established "where the action of the employee is justified or reasonable under the circumstances." *Frumento v. Unemployment Comp. Bd. of Rev.*, 351 A.2d 631, 634 (Pa. 1976).

---

[4] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

9

First, Claimant contends that "Employer failed to provide any firsthand testimony that [Claimant] used a cell phone on June 16, 2020 while operating machinery." Claimant's Br. at 13. According to Claimant, Mr. Rexer made a "rash conclusion" that because Claimant's head was down while he was seated in the dump truck, he must have been using his cell phone. *Id.*

At the hearing, Mr. Rexer testified that on the day in question, he drove his vehicle into the quarry, pulled up next to Claimant, and observed Claimant sitting in his truck, looking downward and texting. N.T., 12/9/20, at 12. Mr. Rexer blew the airhorn to get Claimant's attention, but Claimant did not look up and continued texting. *Id.* When Claimant asked Mr. Rexer on cross-examination how he could have seen Claimant on his cell phone, Mr. Rexer replied, "[Y]ou had [the cell phone] in your hand[] . . . . It was in your hand." *Id.* at 15. Mr. Rexer then testified:

> When I saw [Claimant] on the cell phone, I pulled my dump truck to within 20 feet in front of me, and I put it in reverse and backed it up. I blew the horn, and he still didn't do anything. He's right there on his phone. I put my truck in reverse and backed up. I had backed up a ramp about 250 feet away, got out, ran to the excavator. He still never looked up. Until the excavator moved, he didn't do anything. . . . I was right there on top of him. He never saw me.

*Id.* at 16.

The Board credited Mr. Rexer's testimony and discredited Claimant's testimony that when Mr. Rexer approached his truck, his head was resting on his hands and his cell phone was dead. Bd.'s Order, 3/5/21, at 1; Bd.'s F.F. No. 8. The Board also found that Claimant was responsible for operating the crushing machine that was left running and unattended. Bd.'s Order, 3/5/21, at 1. It is well-settled that the Board is the ultimate factfinder in UC cases and is entitled to make its own determinations as to witness credibility and evidentiary weight. *Serrano v. Unemployment Comp. Bd. of*

10

*Rev.*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016). This Court may not re-evaluate the Board's credibility findings or resolution of evidentiary conflicts on appeal. *Id.* Based on our review of Mr. Rexer's testimony, which the Board credited, we conclude that substantial evidence supports the Board's finding that Claimant was using his cell phone while operating equipment in the quarry on June 16, 2020.

Second, Claimant asserts that Employer failed to prove that it has a cell phone policy and that Claimant was aware of the policy, because "no policy was introduced into the record." Claimant's Br. at 14. In essence, Claimant contends that Employer was required to introduce evidence of a written policy in order to satisfy its burden of proof. We disagree.

Contrary to Claimant's contention, a work policy need not be written in order for its violation to constitute willful misconduct. *See Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 608-09 (Pa. Cmwlth. 2011) (concluding that the claimant committed willful misconduct by violating the employer's policy prohibiting personal cell phone use while on duty, where the existence of the policy was established by the testimony of the employer's two witnesses). Moreover, this Court has recognized that the Board's factual findings can be based on testimony alone; corroborating documentary evidence is not required. *See Holt v. Unemployment Comp. Bd. of Rev.*, 840 A.2d 1071, 1073 (Pa. Cmwlth. 2004) (concluding that testimony alone, if credited by the Board, is substantial evidence sufficient to support a finding of fact); *see also Beverly Hall Corp. v. Unemployment Comp. Bd. of Rev.*, 106 A.3d 829, 836 (Pa. Cmwlth. 2014) ("Based on Dr. Kracht's testimony alone, the Board's finding that [the employer] did not operate primarily for religious purposes is supported by substantial evidence.").

11

Here, Mr. Rexer testified that, one month before Claimant's last day of work, Employer implemented a policy prohibiting cell phone use in the quarry and requiring employees to keep their cell phones in their personal vehicles. N.T., 12/9/20, at 12. Mr. Rexer testified that the cell phone prohibition was also part of Claimant's MSHA training. *Id.* Mr. Rexer explained that Employer implemented the policy because Claimant frequently used his cell phone while working in the quarry, which posed a significant safety hazard. *Id.* Mr. Rexer's testimony regarding the cell phone policy was further corroborated by Claimant's witness, Mr. Wheeler, who testified: "[W]e were told that we couldn't have our cell phones." *Id.* at 21. Finally, Mr. Rexer testified that he had previously confronted Claimant about his cell phone use and instructed Claimant to leave his cell phone in his truck while at work. *Id.* at 16; Bd.'s F.F. No. 5.

Moreover, Employer presented substantial, credible evidence that Claimant knowingly violated the cell phone policy. Mr. Rexer testified that he observed Claimant sitting in his truck using his cell phone instead of overseeing the operation of the rock crushing machine, which had malfunctioned. N.T., 12/9/20, at 13-14, 16. The Board credited this testimony. Bd.'s Order, 3/5/21, at 1; Bd.'s F.F. Nos. 4, 8. Therefore, we conclude that the record contains substantial evidence to support the Board's findings that Employer had a cell phone policy, that Claimant was aware of the policy, and that Claimant knowingly violated the policy.

Even absent a formal policy, however, we would still conclude that Claimant's failure to follow Mr. Rexer's verbal directive to not use his cell phone in the quarry constitutes willful misconduct. Our Court has explained: "It is *not necessary that an employer's reasonable order or directive be written* in order for the Court to determine that an employee's violation thereof constitutes willful misconduct[;] *an employer may deal with its employees on a non-written basis and expect its directives to be followed*."

*Graham v. Unemployment Comp. Bd. of Rev.*, 840 A.2d 1054, 1075 (Pa. Cmwlth. 2004) (emphasis added); *see also Baldauf v. Unemployment Comp. Bd. of Rev.*, 854 A.2d 689, 692 (Pa. Cmwlth. 2004) (concluding that the claimant's use of her work computer for personal reasons after being instructed not to do so amounted to willful misconduct); *Brady v. Unemployment Comp. Bd. of Rev.*, 727 A.2d 1199, 1201 (Pa. Cmwlth. 1999) (concluding that the claimant's refusal to comply with his employer's policy requiring certain employees to work every fifth Sunday simply because the policy was not in writing amounted to willful misconduct).

Next, Claimant asserts that even if Employer had a cell phone policy, Employer did not uniformly enforce it. In support of this claim, Claimant cites his testimony that Mr. Rexer had called Claimant on his cell phone multiple times before the final incident, as well as Mr. Rexer's testimony that Mr. Rexer occasionally used his cell phone for emergencies. Claimant's Br. at 16, 18. Claimant contends that if Mr. Rexer was allowed to use his cell phone at work, then Claimant's use of his cell phone cannot be considered willful misconduct.

Our court has recognized that inconsistent enforcement of a work rule will prevent an employer from proving the existence of the work rule and a claimant's deliberate violation thereof. *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 899 (Pa. Cmwlth. 2019). "[I]nconsistent enforcement occurs where an employer enforces a rule so inconsistently that it no longer appears to be a rule that employees must follow." *Id.* at 900; *see Great Valley Publ'g v. Unemployment Comp. Bd. of Rev.*, 136 A.3d 532, 537 (Pa. Cmwlth. 2016) (holding that where the employer admittedly tolerated violations of its policy governing employees' internet use, the employer failed to establish that the claimant's use of the internet amounted to willful misconduct).

13

We conclude that Claimant failed to establish inconsistent enforcement in this case. Contrary to Claimant's assertion, Mr. Rexer testified that when he is working or driving, he will answer an incoming call later, "whenever [he] get[s] to it," and always uses a Bluetooth device for safety. N.T., 12/9/20, at 13. He did not testify that he answers calls on his cell phone while working in the quarry. When asked on cross-examination if he had ever called Claimant at work, Mr. Rexer replied, "[N]o, not when we were working in the quarry." *Id.* at 16. He testified that "[e]ven the foreman didn't have his phone. He left his phone in his truck." *Id.* The Board credited Mr. Rexer's testimony. Bd.'s Order, 3/5/21, at 1. Furthermore, even if Employer permitted its employees to use their phones for emergencies, there is no record evidence showing that Claimant was using his cell phone for an emergency on June 16, 2020.

Finally, Claimant contends that even if he violated Employer's cell phone policy, he had good cause for using his cell phone in the quarry because he needed to communicate on the job. Claimant's Br. at 16. However, Mr. Rexer testified that employees are permitted to communicate by CB radio and the truck in which Claimant was seated was equipped with a CB radio. N.T., 12/9/20, at 12, 16. While Mr. Rexer admitted that Employer sometimes had problems with the CB radios' reliability, his employees were not required to have CB radios for communication; Employer provided the CB radios as a courtesy. *Id.* at 24. In any event, Claimant presented no evidence that he was using his cell phone to communicate with co-workers when Mr. Rexer observed him using his cell phone on his last day of work. Instead, he testified that his cell phone was "dead" or "shut off" at the time. *Id.* at 18, 25. Therefore, we

14

conclude that Claimant failed to establish good cause for using his cell phone in the quarry on June 16, 2020.[5]

## Conclusion

The record evidence establishes that Claimant used his cell phone while operating equipment in Employer's quarry in violation of Employer's cell phone policy. Therefore, we conclude that Employer satisfied its burden of proving that Claimant committed disqualifying willful misconduct under Section 402(e) of the Law. We also conclude that Claimant did not establish good cause for his actions. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

---

[5] Claimant also challenges the Board's finding that he committed willful misconduct by walking off the job site after Mr. Rexer directed him to shovel gravel. *See* Bd.'s F.F. No. 11. However, we need not address this claim, because we have already concluded that Claimant committed disqualifying willful misconduct by using his cell phone in the quarry in violation of Employer's policy. *See Glenn v. Unemployment Comp. Bd. of Rev.*, 928 A.2d 1169, 1172 (Pa. Cmwlth. 2007) ("[A] claimant who has been discharged for multiple reasons is disqualified from receiving [UC] benefits even if only one of those reasons amounts to willful misconduct.").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beau McGroarty,                           :
                   Petitioner       :
                                     :
        v.                            :  No. 320 C.D. 2021
                                     :
Unemployment Compensation                 :
Board of Review,                          :
                   Respondent      :

# **O R D E R**

AND NOW, this 1st day of February, 2022, we hereby AFFIRM the March 5, 2021 Order of the Unemployment Compensation Board of Review.

_____
ELLEN CEISLER, Judge